Good morning, your honors. May it please the court. Mariah Radin on behalf of petitioner appellant Richard Reyes. I'm going to seek to reserve some three minutes of my time if I can. The parties here do not dispute that the giving of the natural and probable consequences instruction in this case was constitutional error. The question is whether there was prejudice. That is whether Mr. Reyes was prejudiced by the erroneous jury instruction. And the prejudice inquiry in this context is focused on the effect that that instruction, erroneous instruction, had on the jury. It is not an examination of the sufficiency of the evidence or other standards that are discussed by respondent. It is focused on whether it affected the jury's journey to the verdict. And this court has described that as this is not whether the jury could have convicted petitioner under a valid theory, but whether it did. And in this case, there's sufficient evidence in the record to show that at least some jurors were not convinced of Mr. Reyes's liability under the valid theories. Though I hope it is clear in our briefing, just to clarify the application of the natural and probable consequences instruction in this case, it is a first degree murder. There is a theory that petitioner filed the bullet that actually was responsible for killing the victim. Or that as he stood next to Mr. Barrera, he aided and abetted him in the murder by shooting next to him. That that was an encouragement. The third theory, the natural and probable consequences theory, applied in this case if Mr. Reyes was not present. If he has liability by providing the firearms to Barrera to commit an assault, and the natural and probable consequences of that assault was a murder. That is not a valid theory of liability for first degree murder. So his defense was that he was a shooter and was there. Correct, Your Honor. And I only emphasize it at this point because the district court analyzed it as if he were a co-participant in a joint assault. How would the natural and probable consequences instruction apply if he is a shooter? I want to be clear that is not, that is neither what occurred at trial. That was not his defense. That's not the record we have. But it is also not, I think, a relevant inquiry at this stage. Let me clear out some wilderness because I confess I still struggle sometimes with the California conditions. If habeas is granted here, what happens? Is the jury's verdict sufficient so that your client would have been convicted of second degree murder and it becomes the state's decision whether to The California courts have handled grants of relief based on two, the case that made this distinction. That is how the California courts... So it's the first degree murder conviction we're focused on. That's correct. Courts have granted relief by either reducing it to a second degree murder conviction or a retrial on first degree murder without the erroneous jury instruction. And if the court were to grant relief here, I believe the California courts would handle it as they have been in that manner. So looking at what we have to indicate there was prejudice here in this case, the jury notes are certainly an indication that the jury focused on Mr. Reyes' defense. The first jury note asked for review of his, Reyes' taped statement to the detective. This is the statement, he did not testify at trial. This is the statement where he says, I was not present. I provided them a gun. I participated in this way. It was Barrera's gun. This is the most direct evidence that supports his theory. The second most direct evidence that supports his theory was the fact... Well, another piece of evidence. I don't want to pin myself to the most persuasive, but that Sullivan, the driver of the vehicle on the night in question, who testified that he was present with Mr. Reyes throughout the evening, that his phone records indicate he called Reyes on his phone at a time when they would have been together participating in this. So the jury was interested in those phone records, not the days or hours of testimony that Sullivan provided pinpointing and incriminating Reyes, but the evidence that also focused on testimony from Jorge Hernandez, essentially another gang member who provided testimony that... A lot of his testimony involved a direct statement from Reyes that was very incriminating, but the jury didn't ask to see that. They asked to see the specific portion of his evidence that involved a statement that Hernandez had heard that Reyes was not who was the second shooter. Let me pose a broad question that has given me trouble in other cases too. In terms of how courts deal with the problems you raise, in this case, there are arguments that and you're making arguments that there are indications from what the jury did in the course of its deliberation, notably in sending out requests and notes that suggest that one or more jurors were struggling with those issues and so it wasn't a sure thing, wasn't clear beyond a reasonable doubt that the jurors would have convicted. And other times, courts wind up discussing the evidence directly as if we're making our own assessment. So suppose I look at this case, and this is hypothetical, but suppose I look at this case and say, wow, this evidence looks pretty overwhelming. It's hard for me to believe that this person wasn't found to be a and see the jury's asking these questions. It looks like there were some jurors that had questions about that. How am I supposed to weigh these different kind of factors between looking at the evidence directly and trying to glean from jury notes the tea leaves of what the jurors might have been doing? Your Honor, and I think most cases that deal with this type of error, an instructional error, where one, there is an invalid theory presented, but other valid theories presented struggle with the same issue. How do we take a general verdict? How do we take this jury process and make sense of it? And there's a lot of combing through jury notes and amount of the length of deliberations and sort of the factors that I've looked at. And where relief is granted, I think in most cases, certainly in, for example, Polito v. Crones or Riley v. McDaniel, um, they, the court comes down to, there is a grave doubt. I, there cannot, I can't... From whatever source. Yeah, from the, exactly, from the notes, from... So even if I would think looking at it myself and what I think reasonable juror would be, and again, this is hypothetical, uh, this is, this is, this is going to be a conviction. If there are enough signs from what the jurors actually did, you're telling me I should pay attention to that record. Absolutely, Your Honor. And I think this court's precedent says that directly. And I think Riley v. McDaniel is one where they reject respondent's argument that a rational juror could have found this person guilty under any number, any of the other two valid theories. They reject that. That is not enough to establish harmlessness. They also reject a harmlessness, um, argument where, um, there was, Riley v. McDaniel involves a deliberation, whether the jury found deliberation. They could have convicted him under felony murder, which didn't even require deliberation. But this court said, no, even though they could have done that, this is not what they could have done. This is what did this jury do. And this jury could not agree on a personal use allegation. They could, they sent out multiple notes, um, focused on his defense. They deliberated for about 15 hours. Over three days, they, um, had, they struggled with this case. That is clear from the record. So I think in this context, there, the court could say there is a grave doubt whether this jury was affected by this error and convicted, or at least some must have relied on that theory. Did you want to save? I do want to save some time, Your Honor. Thank you. Okay. Good morning, Your Honors. Amanda Lopez appearing on behalf of the Pele. The judgment here should be affirmed. Um, as a threshold matter, I just like to note that the relevant inquiry is not specifically what this court saying here today believes the jury did, but in fact, whether the California Supreme Court's finding the, um, error was harmless beyond a reasonable doubt was reasonable, uh, pursuant to Davis v. Ayala. Um, the relevant inquiry is just what looking at the state court's opinion and whether that was reasonable. Let me ask you this. I, I, um, I think the evidence that puts your client, um, um, you know, as, as a, as a participant, uh, in this crime is, is, is pretty strong. Um, explain to me what in the record you think, um, makes Ron as a shooter. Um, I, I agree that the evidence that he was a shooter is very strong. Um, first of all, um, there was testimony from three different gang members who risked retaliation, um, to testify against both Barrera and Reyes. The, um, all of those, all three of those stories were consistent with one another and they all placed Barrera, I'm sorry, Reyes as one of the shooters. Um, moreover, the, uh, petitioner himself, um, spoke with police officer about his, about the shooting and that account of the shooting is also consistent with the other three gang members, um, account of the shooting. But unlike the two gang members who received the information via gossip or actually from the petitioner's, um, direct confession to them, they, um, the petitioner's account had information that only an insider who was actually present at the shooting would have known. It included logistical details and also embarrassing facts that a gang member bragging to his other, his fellow gang members would not have included, um, such as the fact that one of them started to panic immediately after the shooting because they saw a patrol call, patrol car right there. Um, the fact that the victim was wearing a white shirt, that they put the guns in the trash can and that there were two shooters. Um, the two gang members who did testify about the, the confession from petitioner as well, they knew the general facts, but they did not know about the shirt color, the trash cans, um, or the close call with the officer. There was a witness. Correct. Mr. Munoz, was it Mr. Munoz? Yes. So there wasn't... His testimony seemed to suggest that there was only one person who had a gun. His testimony was that he only, that he did see one shooter get out of the car. However, there were two shooters under the, um, under the other gang members, um, testimony. There were two shooters and there were also, there was evidence of... What do we do with, uh, the jury's inability to answer yes to the personal use finding? That finding is actually, um, helpful in that it shows... Explain to me how that's helpful. Of course, Your Honor. Um, and that it shows, it shows a little bit about what the jury was actually thinking. So in terms of the instructions, the jury was instructed by the trial court first that needed to determine guilt. And then only if after that point they determined that petitioner had, was guilty of murder, then it would turn to the three enhancements. Of the enhancements, the final one was the personal use of a firearm enhancement. The jury was instructed that that enhancement requires three elements. First, that the petitioner discharged firearm. Second, they intended to discharge that firearm. And third, that approximately caused great bodily injury. Now, during deliberations, when they were, um, the jury asked the court for, for a definition of approximately cause, uh, for purposes of the enhancement. About over four and a half hours later, the jury returns a note to the court saying that it cannot reach a verdict or reach a finding on that personal use enhancement because of the term approximately. So it would not be logical for a jury to spend well over four and a half hours deliberating whether he, whether, um, he approximately caused great bodily injury if they did not think he was present at the scene and they did not think he shot a gun. The, that was the third element. The first two elements were much easier to get rid of that and to make, to have a finding of not true if they thought that he was not present. Aside from the jury's, uh, forms, um, and notes, the, it's also clear that the jury did not, it also would have been reasonable for the California Supreme Court to find that the error, the instructional error was harmless beyond reasonable doubt in light of the overwhelming evidence, which is discussed at the briefs. And I've touched on a little bit, but, um, there were additional information, additional factors that also supported the evidence already discussed, um, including the fact that the petitioner asked his son's mother to buy and save a newspaper covering the murder. Um, that is not at all consistent with someone who simply supplied guns and had no idea what was going to happen, that someone was going to be murdered as a result of that. And also, as we discussed, there was an eyewitness who said that the petitioner, um, although he was not 100% sure, there was definitely a resemblance. Do you agree with counsel's understanding that if we were to grant relief and were to go back to the state court, that the state court could either impose second degree murder or go for a second trial? Um, pursuant to people of each shoe, the, um, remedies tends to, for a true error would be for it to go back for either recency on second degree murder or for retrial on first degree murder. Um, there is that recent SB, uh, 1437 at play. I'm not sure. A recent what? Oh, I'm sorry. There was a recent, um, proposition passed in California that would be effective as of January 1st, which does, um, discuss the natural, natural and probable consequences doctrine. Um, I'm sorry. I'm not, unfortunately haven't briefed it and would need, if you would like to discuss that further, I definitely wouldn't want to research that anymore. Could a change affect this case? Um. You can't retrospectively change. There is a, there is a, I'm sorry. I'm not fully, haven't fully researched this issue. Exactly. But there is, I, I believe there is a petition process for, um, um, inmates who were to petition a superior court for, um, relief. So this, this bill or whatever it is may potentially provide relief to defendants who were convicted, who were possibly convicted of a natural and probable consequences. Possibly. But I am, I do apologize. I'm not prepared to really discuss that further. I haven't, I would need to definitely research that further and be happy to submit supplemental briefing that were an issue the court were interested in. The same question I, I put to your colleague, which is that we, you can look at this either by us taking a direct look at the evidence, and we can also take a look at it by trying to figure out what the jurors in this case were doing. We review jury verdicts when there are convictions for a sufficiency of the evidence. Could a reasonable jury have reached this conclusion? But of course, we never do that in the case of an acquittal, uh, because that's the end of it. So, so we don't usually get into the business of trying to evaluate a jury verdict. But in the context of this kind of case, frequently we do. And many of the arguments to us, including the ones you just made, put us in the position of trying to figure out what this jury was doing and where it might have gone if we didn't have this natural and probable consequence theory on the table. Can you provide any more guidance to me as to what it is I'm supposed to look at? Is it just the facts and make an assessment for myself as to whether a reasonable jury could have reached any conclusion other than conviction? Or how much do I take into account what the jury actually did here? Well, because this is under 2254 subsection D1 and pursuant to Davis v. Ayala, the relevant inquiry is whether the California Supreme Court's decision in finding the Chapman harmless error, the question is whether that was reasonable. So whether no reasonable, fair-minded jurist could agree with that finding. And to the extent that we're looking through that level of deference, then we would look at the California Supreme Court's findings and say, okay, how could they have reached this conclusion? And then we can look to the evidence, the overwhelming evidence that he was the shooter and also to the jury's notes and questions. Because in this, as applied in this case, it's actually very helpful to see what was going through their minds. They did think that Petitioner was present, he was a shooter. Other than the tentative identification, you spoke of the evidence as overwhelming. I need you to rehearse that for me again, because there was a tentative identification of him as the shooter, but there really wasn't, as I look at the record, any other direct testimony that put a gun in his hand that he was firing. There was evidence, testimony from the driver who testified that... No, so the shooting was the driver, who was Mr. Sullivan, and then also two shooters, co-defendant Barrera and Petitioner Reyes. So the driver testified that he drove them there, that they had the guns, and that Barrera and Petitioner were the shooters. And they actively, that he could feel, he could hear the shooting, he saw the shooting, he could feel the casings hitting the car and going onto the ground. So there is direct testimony of a person, of one of the driver who was present, that Petitioner was in fact one of the shooters. There was also evidence from two other gang members that Petitioner confessed to them on separate occasions that he was a shooter or that he was present for that shooting. And then moreover, there was bullet casings from two different guns. So the fact that there was an eyewitness who identified Petitioner as resembling one of the shooters, that might have had more to do with a vantage point, because there was ballistic evidence that there were in fact two different shooters. And unless the panel has any additional questions, the appellee is ready to submit. Thank you. Just to touch on one or two of the points that were raised, the jury's inability to agree on the personal use allegation, respondent characterizes it as obviously clear that the jury must have agreed he was a shooter and only hung on proximately.  It is not consistent with the jury obviously agreeing that he is a shooter when we already know that the jury has spent 11 hours deliberating the first degree murder, where if he was a shooter, there really is nothing left to deliberate. The jury had the same options for the personal use allegation, the valid options. They just didn't have the natural and probable consequences instruction. They didn't have to find it was his bullet. They didn't have to find that all they had to find is he was there. So if they were so convinced he was there, then the application of proximately as they were instructed and as the DA argued it to them, there really would be no issue. I think the correct analysis is the Brecht analysis. The Supreme Court is clear that in this context of the Hedgepeth error, it's Brecht, which maybe there's really no distinction between the unreasonableness, but I wanted to point that out. Lastly, the SB 1437, I'm no expert at all, but I have looked into it in other cases. It's specifically to address indirect liability through felony murder and conspiracy theories. It's not, I don't think, directly applicable. Before you sit down, explain to me why you think the California Supreme Court's resolution of this was unreasonable under AEDPA. No fair-minded jurist could reach that conclusion. It seems to me it may be a debatable proposition. I may have come up one way, one of my colleagues or you may have come out another way, but to say that no fair-minded jurist could reach that conclusion helped me understand your position on that. Your Honor, because the only way they could have found that is if they completely ignored all the evidence in the record that supported Reyes's defense and the jury's conduct in grappling with his defense of not being present. I understand there was significant evidence of valid theories, but you have to overlook a significant amount of evidence to say that this, that decision could be reached. I think there is an AEDPA analysis, there is the Brecht analysis. I think Davis v. Ayala says Brecht can subsume the AEDPA. I think in this specific type of instructional error context where there's valid and invalid theories, the courts, the Supreme Court and this court have dealt with it by satisfying constitutional error and proceeding to a prejudice analysis under Brecht and with specific instruction for how this court is to go through that process of looking at did this jury do that, do the legally valid theory. And I don't think you could reasonably find or the California Supreme Court could have. And I extensively, perhaps overextensively addressed it in my opening brief why I thought the California Supreme Court decision was unreasonable. Okay. Thank you. Thank you, counsel. We appreciate your arguments this morning. Thank you very much. The matter is submitted at this time.
judges: Parker, Paez, Clifton